2007 WY 108

**In the Matter of the Worker's Compensation Claim of Terry McINTOSH, Appellant (Petitioner),**

v.

**STATE of Wyoming ex rel. WYOMING MEDICAL COMMISSION; and Wyoming Workers' Safety and Compensation Division, Appellees (Respondents).**

No. 06–113.

Supreme Court of Wyoming.

July 12, 2007.

484

Representing Appellant: Bill G. Hibbler of Bill G. Hibbler, P.C., Cheyenne, Wyoming.

Representing Appellees: Patrick J. Crank, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Steve Czoschke, Senior Assistant Attorney General; Keith J. Dodson, Legal Intern. Argument by Mr. Dodson.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

KITE, Justice.

■ Terry McIntosh filed a claim for benefits with the Workers' Compensation Division (the Division) alleging he had suffered a back injury at work. The Division determined his injury to be an aggravation of a pre-existing condition and awarded him benefits. Several months later, the Division determined that Mr. McIntosh's condition was pre-existing and declined payment of further benefits.

[¶ 2] Mr. McIntosh requested a hearing and the Division referred the case to the Office of Administrative Hearings (OAH). Several days later, the OAH transferred the case to the Medical Commission. After a hearing, the Medical Commission issued an order upholding the denial of benefits. Mr. McIntosh appealed to the district court, which also upheld the denial. On appeal to this Court, Mr. McIntosh claims the Medical Commission's order was not supported by substantial evidence and the Medical Commission did not have authority to decide his case because: 1) the Division did not seek to re-open it in accordance with Wyo. Stat. Ann. § 27–14–605(a) (LexisNexis 2005); and 2) it was not a medically contested case. We affirm.

## ISSUES

■ Mr. McIntosh states the issues as follows:

I. Whether the Medical Commission order is supported by substantial evidence?

II. Whether the Medical Commission order is contrary to law because the Workers' Compensation Division failed to comply with Wyo. Stat. § 27–14–605(a)?

III. Whether the Medical Commission order is contrary to law because it determined a non-medically contested issue concerning the application of Wyo. Stat. § 27–14–605(a)?

IV. Whether the Medical Commission panel abused its discretion in failing to consider the testimony of the claims analyst?

The Division re-phrases Mr. McIntosh's first three issues and omits his fourth issue from its issues statement.

## FACTS

■ On September 5, 2003, Mr. McIntosh filled out an employee report of injury in which he stated he had injured his back on June 25, 2003, while replacing ceiling tiles at his job at the Plains Hotel in Cheyenne, Wyoming. On November 3, 2003, the Division issued a final determination in which it concluded "the material aggravation to a pre-existing back injury is compensable and the case is now open for the current exacerbation of your pre-existing injury." Several months later, on April 9, 2004, the Division issued a final determination in which it concluded Mr. McIntosh's "current medical condition of severe spinal stenosis is preexisting to the work related twisting injury" and notified him it was discontinuing payment of benefits.

[¶ 5] Mr. McIntosh requested a hearing and, on May 27, 2004, the Division referred the case to the OAH. On June 7, 2004, the OAH issued an order transferring the case to the Medical Commission. The order stated:

The Office has reviewed the file, in particular the April 9, 2004 Final Determination. The Office finds that the issue to be resolved in this matter is medically contested as defined by the Wyoming Workers' Safety and Compensation Division's Rules, Regulations and Fee Schedules, Ch. 6 § 1(a)(i) (2004). This Office is therefore

without jurisdiction to hear this matter and all proceedings before this Office should be transferred to the Medical Commission for resolution.

[¶ 6] The Medical Commission accepted the case, appointed legal counsel to represent Mr. McIntosh, and issued a scheduling order. Mr. McIntosh and the Division filed disclosure statements and, on May 4, 2005, the Medical Commission convened a hearing. On May 24, 2005, the Medical Commission issued findings of fact, conclusions of law and an order in which it concluded that Mr. McIntosh "ha[d] not met his burden of [proving] that his low back symptoms [were] related to the work accident."

Mr. McIntosh filed a petition for review in district court in which he raised a number of issues, including those presented on appeal. The district court entered an order affirming the denial of benefits. Mr. McIntosh appealed from the district court's order.

## STANDARD OF REVIEW

[¶ 8] In an appeal from a district court's decision on a petition for review of administrative action, we afford no deference to the district court's decision and, instead, review the case as if it came directly from the agency. *Bonsell v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 2006 WY 114, ¶ 7, 142 P.3d 686, 688 (2006). Judicial review of agency decisions is limited to those considerations specified in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005), which provides in pertinent part:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

. . .

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Additionally, we have said:

The substantial evidence test is the appropriate standard of review in appeals from contested case proceedings when factual findings are involved and both parties submit evidence. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence. Even if the factual findings are found to be supported by substantial evidence, the ultimate agency decision may still be found to be arbitrary or capricious for other reasons. An appellate court does not examine the record only to determine if there is substantial evidence to support the agency's decision, but it also must examine the conflicting evidence to determine if the hearing examiner could have reasonably made its finding and order upon all of the evidence before it.

We do not defer to the agency's determination on issues of law; instead, we will correct any error made by the agency in either interpreting or applying the law. *Bonsell,* ¶ 8, 142 P.3d at 688–89.

## DISCUSSION

### 1. *Sufficiency of the Evidence*

[¶ 9] Mr. McIntosh asserts the Medical Commission's order was not supported by substantial evidence because the only competent medical evidence was Dr. Steven Beer's deposition testimony that in his opinion Mr. McIntosh's symptoms were related to his work injury. Mr. McIntosh claims the Medical Commission improperly disregarded Dr. Beer's testimony and based its ruling on the unsupported conclusion that Mr. McIntosh was not credible. The Division contends

the Medical Commission's conclusion that Mr. McIntosh was not credible was supported by substantial evidence and the Medical Commission, as the trier of fact, was entitled to give the evidence, including Dr. Beer's testimony, the weight it thought it deserved.

[¶ 10] We address first the finding that Mr. McIntosh was not credible. In its four pages of findings, the Medical Commission found that Mr. McIntosh gave different dates as to when the injury occurred, June 25; June 16; June 16 or 17; June 11; early July; and July 20. The Medical Commission also found that Mr. McIntosh gave different accounts of the injury, including that "he has no history of injury recently"; "he could not recall the exact incident but reported doing lots of lifting, standing and twisting"; he had ongoing back pain since the beginning of July but "does not recall an exact incident"; he was on a ladder handing ceiling tiles down to a co-worker when something twisted in his back; and he was turning sideways while lowering ceiling tiles and felt and heard a "pop" in his low back. The Medical Commission pointed out in its findings that, in contrast to the last statement which Mr. McIntosh made at the hearing, none of the medical records indicated he had reported hearing a "pop" to any doctor.

[¶ 11] Additionally, the Medical Commission found that Mr. McIntosh gave different accounts of when he first noticed the pain, initially stating the pain began when he got off the ladder; then testifying that he had no pain until later that night; and finally, when asked about his prior statement that he told his supervisor within an hour or two of the injury, changing his testimony and saying he experienced pain immediately. The Medical Commission also found that Mr. McIntosh stated in his report of injury and testified at the hearing that he had no back problems before the work incident when the medical records indicated otherwise. The June 18, 2003, record, for example, stated "he has no history of injury recently, but does have an extensive history of back problems, including motorcycle accidents." A July 1, 2003, record stated his past medical history included some motorcycle accidents, car accidents,

neck pain, sacroiliac pain, and a past history of having seen a chiropractor. In light of the medical records, the Medical Commission found Mr. McIntosh's testimony that he had no prior back problems "wholly lacking in credibility." In its findings, the Medical Commission also found it significant that Mr. McIntosh did not file his report of injury until September 5, 2003, by which time, he testified, his job had been eliminated.

[¶ 12] Based upon its four pages of findings, the Medical Commission made the further finding that Mr. McIntosh generally was not credible. In its conclusions of law, the Medical Commission stated:

6. Mr. McIntosh has not met his burden of proof. He has given multiple accounts of when the injury occurred and when his symptoms first appeared. He never reported a "popping" sound to any doctor. His initial reports to various physicians did not indicate a discrete mechanism of injury or how he was injured, and there were reports he had a long standing low back problem. His radiographic studies show significant preexisting degenerative changes which could have become symptomatic through natural progression, activity outside of work or possibly at work. The timing of the injury report coincides with the loss of his job. Weighing all the evidence and testimony the Panel is left with the ultimate conclusion that Mr. McIntosh has not met his burden of proof.

[¶ 13] We conclude the Medical Commission's findings of fact and conclusions of law were supported by substantial evidence presented at the hearing. It is clear from the findings of fact that the Medical Commission gave considerable weight to the fact that Mr. McIntosh's reports about his injury were inconsistent in many ways, including what, when and how it happened and his condition before and after it happened. We cannot properly substitute our judgment for that of the Medical Commission nor can we conclude from the record presented that reasonable minds could not have reached the conclusions the Medical Commission reached on the basis of the evidence before it. As the trier of fact, the Medical Commission was charged with determining relevancy, assign-

ing probative values and weighing the evidence. *Decker v. State ex rel. Medical Comm'n,* 2005 WY 160, ¶ 33, 124 P.3d 686, 697 (2005). There is nothing in this record or the findings and conclusions from which we can conclude the Medical Commission's ruling was not supported by substantial evidence, or that it was arbitrary and capricious.

[¶ 14] We reach a similar conclusion with respect to Mr. McIntosh's claim that the Medical Commission improperly disregarded Dr. Beer's testimony. The Medical Commission's findings of fact included the following: Mr. McIntosh saw Dr. Beer on August 20, 2003, and related that a month ago [i.e. July 20th] he was changing ceiling tiles while working and developed the onset of back pain with numbness and tingling into the left hip and leg. Dr. Beer's impression was symptomatic spinal stenosis at L4–5. He wrote a letter to Dr. Yost on August 20, 2003, relating that Mr. McIntosh had suffered from low back pain and left leg pain since a work related accident. He wrote a letter to the Division on April 6, 2004, stating that Mr. McIntosh presented with an injury to his back that occurred while working. Dr. Beer stated in the April letter that in his opinion the injury was a new injury, not a preexisting injury.

[¶ 15] In his deposition, taken on March 23, 2005, Dr. Beer testified that spinal stenosis can be a congenital condition or caused by an injury. He testified he believed Mr. McIntosh's stenosis was a new injury and not preexisting because he had no symptoms before the work accident and afterwards he had back and lower extremity pain. He testified there was a direct cause and effect relationship.

[¶ 16] Dr. Beer testified Mr. McIntosh had severe stenosis; if Mr. McIntosh had stenosis before the work accident, he would have had a lot of symptoms; and, it was difficult to believe it had been ongoing for any extended period. Dr. Beer testified he did not have copies of Mr. McIntosh's medical records showing a history of back problems and his opinions took into account what Mr. McIntosh had told him.

[¶ 17] When asked about whether Mr. McIntosh could have aggravated a preexisting injury, Dr. Beer testified that Mr. McIntosh did not have symptoms before the work injury, this was a new injury, but if he had prior symptoms this would be an aggravation of a preexisting condition. Dr. Beer also testified an individual with Mr. McIntosh's degenerative changes could have aggravated that condition in many ways either at work or elsewhere and it was possible Mr. McIntosh had a herniated disc before June 2003 and the onset of symptoms had been delayed.

[¶ 18] Weighed against Dr. Beer's testimony, the Medical Commission had Mr. McIntosh's inconsistent reports concerning his back problems and a written report from John Bender, O.D., who reviewed the file and concluded Mr. McIntosh did not have a specific work injury that led to his symptoms; he had preexisting degenerative back problems that became symptomatic; and it was just as likely his symptoms resulted from a natural progression of the degenerative disc disease as any work or other activity.

[¶ 19] Based upon all of the evidence, the Medical Commission made the following finding pertinent to Dr. Beer:

> Dr. Beer was not given an accurate history and he did not have the opportunity to review the prior records. Dr. Beer's opinions are based heavily on what Mr. McIntosh told him which is highly dubious.

[¶ 20] It is apparent the Medical Commission fully considered Dr. Beer's testimony and, in light of other evidence, reasonably concluded his opinions were based on incomplete and incorrect information. As the trier of fact, the Medical Commission was entitled to give his testimony the weight it concluded it deserved in light of other evidence presented. *Decker,* ¶ 33, 124 P.3d at 697. The Medical Commission's order was supported by substantial evidence.

## 2. *Medical Commission Authority to Decide This Case*

[¶ 21] In his second and third issues, Mr. McIntosh challenges the Medical Commission's authority to decide this case on two separate grounds. First, he claims the Medi-

cal Commission did not have the authority to determine whether benefits were payable after the Division awarded benefits and then denied benefits for the same injury. Second, he claims the Medical Commission did not have authority to decide this case because it was not a "medically contested case." We consider these claims separately.

### a. The Medical Commission's Authority to Decide This Case After the Division Initially Awarded Benefits and Then Denied Benefits.

■ [¶ 22] In support of his claim that the Medical Commission did not have authority to decide this contested case after the Division awarded and then denied benefits, Mr. McIntosh cites § 27–14–605(a) which provides in pertinent part:

If a determination is made in favor of or on behalf of an employee for any benefits under this act, an application may be made to the division by any party within four (4) years from the date of the last payment for ... a modification of the amount of benefits on the ground of increase or decrease of incapacity due solely to the injury, or upon grounds of mistake or fraud. The division may, upon the same grounds and within the same period, apply for modification of medical ... benefits to a hearing examiner or the medical commission, as appropriate.

Mr. McIntosh contends this provision contains the exclusive mechanism for reconsidering whether benefits are payable once the Division has awarded benefits. Because the Division did not follow the procedures set forth in the provision, and instead unilaterally denied further benefits after its initial determination to award them, Mr. McIntosh claims the Medical Commission's order must be reversed. As part of this argument, Mr. McIntosh also contends the burden of proof was improperly placed on him at the hearing. Characterizing the proceeding as a modification of benefits, he argues the Division had the burden of proof.

[¶ 23] The Division responds that § 27–14–605(a) does not apply because it was not seeking a modification of benefits already awarded to Mr. McIntosh. Instead, the Division asserts, it was reviewing a new application—Mr. McIntosh's April 2004 application for temporary total disability (TTD) benefits—to determine whether the medical condition for which he was seeking future benefits was related to an alleged work injury. The Division asserts this is an ongoing process with any claimant and for purposes of determining claims it is always entitled to consider whether a causal relationship exists between the claimant's work and his injury. The Division contends § 27–14–605(a) only applies where a re-determination is sought as to past claims. Responding to Mr. McIntosh's argument concerning the burden of proof, the Division asserts that for purposes of determining entitlement to future benefits the claimant always has the burden of satisfactorily associating that claim with the asserted work-related injury.

[¶ 24] The Division issued its final determination on November 3, 2003. Pursuant to Wyo. Stat. Ann. § 27–14–609(a) (LexisNexis 2005), the Division was required to review the determination at least once every six months. In April 2004, Mr. McIntosh submitted to the Division a recertification of TTD signed by Dr. Beer. Dr. Beer also sent a letter advising the Division that Mr. McIntosh's injury was not preexisting but was a new injury. The recertification and review apparently raised questions with the Division and, upon reviewing the medical documentation submitted to it, the Division concluded the injury was preexisting and Mr. McIntosh's outstanding claims were not compensable.

■ [¶ 25] We agree with the Division that Mr. McIntosh's case was not "reopened" within the meaning of § 27–14–605(a) but proceeded as specifically required by Wyo. Stat. Ann. § 27–14–606 (LexisNexis 2005) which provides that each determination or award is a separate administrative decision. Under that provision, the claimant has the burden of proving that his outstanding claims resulted from a work-related injury. The fact that the Division previously awarded Mr. McIntosh benefits does not guarantee him future benefits. As we have said:

The Division's uncontested award of benefits is not a final adjudication that

precludes the Division from challenging future benefits. The statutory language of the Wyoming Worker's Compensation Act confers finality on the benefits paid to the employee through uncontested determinations, subject to the exceptions found in Wyo. Stat. Ann. § 27–14–605. The statutory language, however, does not guarantee a claimant future benefits on the basis of a prior award nor does public policy favor the payment of an unjustified worker's compensation claim. Therefore, an employee/claimant must prove that he was entitled to receive benefits for all outstanding claims despite previous awards for the same injury.

*Hall v. State ex rel. Wyo. Workers' Comp. Div.*, 2001 WY 136, ¶ 14, 37 P.3d 373, 377 (2001).

[¶ 26] The Division's uncontested award of benefits to Mr. McIntosh in November did not preclude the Division from challenging the payment of future benefits in April. Here, the Division did not contest the compensability of Mr. McIntosh's original claim or seek to retract any payments already made to him. Rather, the Division challenged his right to payment of future benefits. Therefore, § 27–14–605 is not applicable and Mr. McIntosh was required to prove that he was entitled to receive benefits for his unpaid claims despite the previous award. The Medical Commission had authority to decide the contested case and properly allocated the burden of proof.

### b. The Medical Commission's Authority to Decide This Medically Contested Case

[¶ 27] Mr. McIntosh asserts the Medical Commission did not have authority to decide this case because it was not a "medically contested case" within the meaning of Wyo. Stat. Ann. § 27–14–616(b)(iv) (LexisNexis 2005). Rather, he claims, the case was primarily a legal one because he asked for a determination on legal issues involving the burden of proof and the applicability of § 27–14–605. He cites *French v. Amax Coal West*, 960 P.2d 1023 (Wyo.1998) and *Jacobs v. State ex rel. Wyo. Med. Comm'n*, 2005 WY 104, 118 P.3d 441 (2005) as support for his

claim. The Division responds that this case was properly transferred to and decided by the Medical Commission because it was a medically contested case in which the primary issue to be decided was whether Mr. McIntosh's back problems were work-related.

[¶ 28] Section 27–14–616(b)(iv) provides in relevant part:

The division *shall refer medically contested cases to the commission* for hearing by a medical hearing panel. The decision to refer a contested case to the office of administrative hearings or a medical hearing panel established under this section shall not be subject to further administrative review. *Following referral by the division, the* hearing examiner or *medical hearing panel shall have jurisdiction to hear and decide all issues related to the written notice of objection* filed pursuant to W.S. 27–14–601(k). * * * When hearing a medically contested case, the panel shall serve as the hearing examiner and shall have exclusive jurisdiction to make the final administrative determination of the validity and amount of compensation payable under this act.

[¶ 29] Looking at the plain and ordinary meaning of the language as is our practice when interpreting statutes, *SLB v. JEO (In re ANO)*, 2006 WY 74, ¶ 8, 136 P.3d 797, 800 (2006), it is clear the Division is required to refer medically contested cases to the Medical Commission for hearing and the Division's decision in that regard is not subject to challenge at the administrative level. It is also clear that once the Division has referred a case, the Medical Commission has jurisdiction to decide all issues related to those identified in the hearing request. Thus, upon the Division's determination that a contested case is medically contested, it must refer it to the Medical Commission and, upon referral, the Medical Commission has jurisdiction to decide the issues presented.

[¶ 30] In Mr. McIntosh's case, the Division did not refer the case to the Medical Commission. Rather, the Division referred the case to the OAH which then transferred

it to the Medical Commission. Section 27–14–616(e) provides in pertinent part:

> Upon agreement of all parties to a case, the hearing examiner in a contested case under this chapter may transfer a medically contested case to a medical hearing panel. . . .

The record in Mr. McIntosh's case does not reflect whether the OAH obtained the parties' agreement before transferring the case to the Medical Commission. However, we are not willing to assume from a silent record that the OAH failed to seek or obtain the parties' agreement particularly where, as here, neither party objected to the transfer nor have they claimed on appeal that the OAH failed to obtain their agreement. When a statute allows a case to be transferred upon the parties' agreement, the OAH transfers the case, and neither party objects, it is reasonable to conclude the parties agreed with the transfer.

[¶ 31] Thus, Mr. McIntosh's case was transferred to the Medical Commission as a "medically contested case." The following administrative rule governs this situation:

> (i) For purposes of referring contested cases to the Workers' Compensation Medical Commission for hearing, * * * the phrase "medically contested cases" shall include those cases in which the primary issue is:
>
> (A) a claimant's percentage of physical impairment;
>
> (B) whether a claimant is permanently totally disabled;
>
> (C) whether a claimant who has been receiving TTD benefits remains eligible for those benefits under W.S. § 27–14–404(c); or,
>
> (D) any other issue, the resolution of which is primarily dependent upon the evaluation of conflicting evidence as to medical diagnosis, medical prognosis, or the reasonableness and appropriateness of medical care.

Rules, Regulations and Fee Schedules of the Wyoming Workers' Safety and Compensation Division, Chapter 6, § 1(a)(i)(D) (2004). Giving this language its plain and ordinary meaning, it is clear the medically contested cases the Division is required to refer to the Medical Commission "shall include" cases in which the primary issue is one of those enumerated in subsections (A) through (D).

[¶ 32] The ordinary meaning of the word "include" is: to take in or comprise as part of a whole or group. Webster's Third New International Dictionary 1143 (2002). Thus, cases in which the primary issue is one of those enumerated in (A) through (D) are "part of the group of" medically contested cases the Division is required to refer to the Medical Commission. Importantly, the rule does not state that the phrase "medically contested cases" shall "only include" or "exclusively include" cases involving issues (A) through (D). Giving effect to the plain meaning of the rule and the legislature's intent in § 27–14–616, it is reasonable to conclude that cases where the primary issue is one of those identified in the rule are part of the group of medically contested cases the Division is required to refer.

■ [¶ 33] This Court has said, "A 'medically contested case', as defined by the Division, is one in which the primary issue requires the application of a medical judgment to complex medical facts or conflicting diagnoses." *French,* 960 P.2d at 1030; *Jacobs,* ¶ 10, 118 P.3d at 445. Consistent with the language and intent of the statute and the rule, this definition allows for referral to the Medical Commission when cases primarily involve medically contested issues, including but not limited to those identified in subsections (A) through (D) of the rule.

■ [¶ 34] After the OAH referred this case to the Medical Commission, Mr. McIntosh identified the primary issue for determination as follows:

> It is the contention of the Claimant that he suffered a compensable work-related injury in the form of aggravating his existing condition.

The Division identified the "primary medical issue" as causation. To resolve the issue, the claimant's medical condition before and after the alleged work injury had to be evaluated.

[¶ 35] The evidence presented to the Medical Commission at the hearing included medical records showing the claimant had a

prior history of back problems and a recent work injury. The evidence also included Dr. Beer's testimony that: he was not aware of a prior history of back problems and believed this was a new injury caused by a work incident; records showing prior back problems would indicate Mr. McIntosh had suffered a material aggravation of a pre-existing injury; although tests suggested degeneration, the problems in his opinion became symptomatic when the disk herniated; and in his opinion, to a reasonable degree of medical probability, any prior back-related complaints became more severe as a result of the work injury, causing Mr. McIntosh to seek treatment. The evidence also included Dr. Bender's report stating that in his opinion there was no causal connection between Mr. McIntosh's work and his back problems and the back problems were more likely a result of degenerative changes.

[¶ 36] Thus, conflicting medical testimony requiring the application of medical judgment to complex medical facts was presented at the hearing on the primary medical issue of whether Mr. McIntosh's back problems resulted from normal degeneration or became symptomatic as a result of a work injury. While the decision reached by the Medical Commission may also have involved non-medical issues, the primary issue presented for determination at the hearing was whether a work-related injury caused the back problems—a "medically contested issue."

[██] This case is not like *French* or *Jacobs*, in which the Court reversed Medical Commission rulings on the ground that the cases were not medically contested and remanded them for referral to the OAH. In *French*, the primary issue the Medical Commission decided was the applicability of a rule of law mentioned, but not adopted, in *Long v. Big Horn Const. Co.*, 75 Wyo. 276, 295 P.2d 750 (1956).[1]

By the time of the hearing, the legal issues of the case had clearly taken precedence over the medical issues. All parties agreed that the legal issues, yet to be expressly decided in Wyoming case law, controlled the outcome of the case. *French*, 960 P.2d at 1028. The Medical Commission concluded that determination of the only medical issue—a definitive diagnosis showing whether the loss of consciousness that led to the work injury was caused by the claimant's preexisting condition—was unnecessary to deciding the case. Because the determinative issue was purely legal, we held the Medical Commission lacked subject matter jurisdiction and its order was void.

[¶ 38] In *Jacobs*, the Medical Commission determined that *collateral estoppel* and *res judicata* prohibited the claim for benefits. We held the Medical Commission did not have authority to consider those legal issues and remanded the case for referral to the OAH. We said: "When the Medical Commission determined in this instance that there were no medically contested issues before it * * * the Medical Commission was obligated to return the case to the Division for referral to the [OAH]." *Jacobs*, ¶ 10, 118 P.3d at 444–445. Thus, *French* and *Jacobs* are distinguishable because, unlike the issues decided by the Medical Commission in those cases, the primary issue in Mr. McIntosh's case was whether his injury was causally related to his work, a determination requiring the application of medical judgment to complex medical facts.

[¶ 39] As was true in Mr. McIntosh's case, the Medical Commission is frequently asked to determine whether an injury was causally related to a claimant's employment. *See, e.g., Sanchez v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 2006 WY 64, 134 P.3d 1255 (2006); *Spletzer v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 2005 WY 90, 116 P.3d 1103 (2005); *Padilla v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 2004 WY 10, 84 P.3d 960 (2004). The fact that the Medical Commission may, in the course of deciding that medical issue, also be asked to consider non-medical issues does not deprive it of authori-

---

1. The rule of law mentioned in *Long* was that employment induced by false or fraudulent representations not going to the contents of the contract is voidable and not void, meaning benefits will be allowed unless a causal connection exists between the injury and the misrepresentation. *French*, 960 P.2d at 1026, fn. 2.

ty to decide the case. The legislature expressly provided for this eventuality by stating, "the medical hearing panel shall have jurisdiction to hear and decide all issues related to the written notice of objection." § 27–14–616(b)(iv). Thus, the fact that Mr. McIntosh also raised legal issues during the hearing did not deprive the Medical Commission of its authority to decide the case. So long as the primary issue for determination was the medically contested issue of whether Mr. McIntosh's back problems were caused by a work-related injury, the Medical Commission had authority to decide the case.

### 3. Failure to Consider Testimony

[¶ 40] Mr. McIntosh's final claim is that the Medical Commission erred in failing to consider the testimony of the Division's claims analyst, Tanya Wheeler. Mr. McIntosh claims that Ms. Wheeler's testimony was relevant to explain why the Division denied him benefits in April when it had awarded him benefits for the same injury several months earlier. Through her testimony, he sought to prove the Division had no basis for discontinuing his benefits.

[¶ 41] In its order, the Medical Commission summarized Ms. Wheeler's hearing testimony as follows:

She was the third claims analyst to handle this file and took over the file in March of 2004. Shortly after getting the file she reviewed the file with other Division employees and based on the medical evidence, a decision was made to issue a final determination to terminate benefits. This termination was apparently based on a preexisting condition or that Mr. McIntosh had returned to his base line condition.

The Medical Commission concluded Ms. Wheeler's testimony was "irrelevant to this proceeding [because] once the issue is referred, it is the responsibility of the Panel to decide medical issues, and why or how the issue came to the Medical Commission is not relevant."

[¶ 42] Rulings on the admission of evidence are within the sound discretion of the agency as the trier of fact. *Aspen Ridge Law Offices, P.C. v. Wyo. Dep't of Employ-*

*ment,* 2006 WY 129, ¶ 13, 143 P.3d 911, 917 (2006). We will only set aside an evidentiary determination if the agency abused its discretion. *Id.* In Mr. McIntosh's case, the Medical Commission allowed Ms. Wheeler to testify; therefore, his claim does not involve the exclusion of testimony. Rather, he claims the Medical Commission erred in concluding her testimony was irrelevant and declining to consider it.

[¶ 43] We find no error in the Medical Commission's decision not to consider Ms. Wheeler's testimony. The Medical Commission correctly concluded that when a case is referred for a contested hearing, it becomes its responsibility to independently determine the issues presented. In Mr. McIntosh's case, the primary issue presented was whether his injury was causally related to his work. The Medical Commission allowed Ms. Wheeler to testify, determined her testimony was not relevant to its determination of the issue and then appropriately made its own independent determination concerning causation without considering the Division's reasons for its decision.

### CONCLUSION

[¶ 44] The Medical Commission's order was supported by substantial evidence and was not arbitrary and capricious. The Medical Commission had authority to decide this medically contested case. Section 27–14–605 did not apply to these proceedings. The Medical Commission did not err in declining to consider the Division's reasons for discontinuing benefits and making its own independent decision concerning causation based upon Mr. McIntosh's testimony and the medical evidence presented at the hearing.

[¶ 45] The District Court's order affirming the Medical Commission's order is affirmed.

GOLDEN, J., files a dissenting opinion in which VOIGT, C.J., joins.

GOLDEN, J., dissenting, in which VOIGT, C.J., joins.

[¶ 46] I respectfully dissent because I do not believe the Medical Commission had ju-

risdiction to decide this case. The case contains no medically contested issues and, in any event, was not properly referred to the Medical Commission. The Medical Commission therefore had no jurisdiction to decide this case, and this appeal should be dismissed.

[¶ 47] From a medical perspective, I see no disputed complex medical facts. Indeed, one need only review the majority opinion's discussion on the sufficiency of the evidence to appreciate that the only evidentiary issue in this case was Mr. McIntosh's credibility. Simply because the Medical Commission judged Mr. McIntosh's credibility primarily by the history he gave to the various physicians he consulted about his back pain does not make this hearing medically contested. The Medical Commission's ultimate denial of benefits did not depend on any medical information in the medical records, but rather on the factual history given by Mr. McIntosh contained in those records.

[¶ 48] The majority opinion, in paragraph 36, gives great significance to Dr. Bender's paper review in determining that the hearing involved "conflicting medical testimony requiring application of medical judgment to complex medical facts." I fail to discern any conflicting medical testimony. It was uncontested that Mr. McIntosh's spine showed signs of degenerative changes. The contradiction in the evidence presented by Dr. Beer and Dr. Bender was one of general fact.

[¶ 49] Dr. Bender, in his paper review, focused on inconsistencies in Mr. McIntosh's reporting of the mechanics and immediate severity of the back injury to various doctors visited in the aftermath of his alleged work injury. These inconsistencies led Dr. Bender to question Mr. McIntosh's credibility. For instance, at one point Dr. Bender opines that he has "deep concern about the change in [Mr. McIntosh's] report of the mechanism of injury between the time he saw Dr. Yost and the time that he filled out his Employee Report of Injury Form on 09/18/03." [2] Relying on the inconsistencies, and in particular Mr. McIntosh's early reports that he did not

remember an exact incident leading to the back pain, Dr. Bender expressed skepticism as to whether Mr. McIntosh's herniated disc could be related to any specific work activity. Ultimately, all Dr. Bender concluded from his paper review was that "it is just as likely that [Mr. McIntosh] developed symptoms simply as a result of the natural progression of his [underlying degenerative condition] as it is his work activities which by his own description were not in and of themselves likely to cause any of the abnormalities noted on his MRI scan."

[¶ 50] This conclusion in no way contradicted the testimony of Dr. Beer. Dr. Beer acknowledged the degenerative changes to Mr. McIntosh's spine and that his current symptoms could be caused by any number of factors. Dr. Beer testified, however, that the reason he attributed the injury to the work-related incident was because he believed Mr. McIntosh's version of the events leading to the injury, including Mr. McIntosh's statement that he had no prior back injury and no history of back pain prior to the work incident. This testimony was discounted by the Medical Commission not on any medical basis. It was discounted based on a finding that Mr. McIntosh had given Dr. Beer an inaccurate history. This finding, in turn, is based of course on the Medical Commission's disbelief of Mr. McIntosh. There simply were no medically contested issues, leaving the Medical Commission with no jurisdiction to decide the case.

[¶ 51] Procedurally, there is an even bigger problem. Prior to the hearing, Mr. McIntosh questioned the burden of proof. Which party bears the burden of proof is strictly a question of law. *Dan's Supermarket v. Pate*, 2001 WY 104, ¶ 8, 33 P.3d 1121, 1124 (2001). As this Court has made clear, the Medical Commission does not possess the expertise to answer questions of law. *Jacobs v. State ex rel., Wyoming Medical Comm'n*, 2005 WY 104, ¶ 12, 118 P.3d 441, 445 (2005); *French v. Amax Coal West*, 960 P.2d 1023, 1030 (Wyo.1998). The error in the Medical Commission's attempt to answer this ques-

---

**2.** Dr. Yost was the one of the first doctors seen by Mr. McIntosh for the back pain at issue. The visit referred to by Dr. Bender was on July 1, 2003, approximately two weeks after the reported work incident, but after Mr. McIntosh had already visited two other physicians.

tion of law was magnified in this case because the Medical Commission did not address the question except in its final order. There is an obvious due process problem with having a claimant enter a hearing without knowing whether he bears the burden of proof. Answering the legal question was a prerequisite to holding the hearing and could have been answered only by the OAH. Because of the magnitude of this legal question, even had there been medically contested issues in this case, I suggest that this legal question was primary, placing jurisdiction with the OAH and not the Medical Commission.

[¶ 52]   Finally, I am concerned about the process by which the case was referred to the Medical Commission. The Division statutorily is charged with referring the case either to the Medical Commission or the OAH in the first instance. Should the Division refer a case to the Medical Commission, the Medical Commission must then evaluate the case on a continuing basis to ensure the issue(s) involved is primarily a medically contested issue(s). If at any time it appears that the primary issue(s) is not medically contested, the Medical Commission must return the case to the Division. *See generally Birkle v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 2007 WY 9, 150 P.3d 187 (2007); *Jacobs; French.*

[¶ 53]   The majority opinion, in paragraph 39, asserts that upon a referral from the Division to the Medical Commission, the Medical Commission has jurisdiction to decide all issues related to those identified in the hearing request. Unless the statements to this effect are intended to directly overrule this Court's decisions in *Birkle; Jacobs; French; and Russell v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 944 P.2d 1151 (Wyo.1997), they are far too broad. Although administrative review is not available to the parties to challenge the Division's referral, that does not remove the statutory restraints on the Medical Commission's subject matter jurisdiction. *French*, 960 P.2d at 1029 (referral by Division does not override statutory jurisdictional limitations.) Because the majority does not express an intent to overrule established case law, and because

the majority opinion concedes that the Medical Commission's subject matter jurisdiction is limited to medically contested cases in other portions of the opinion, I construe the majority opinion's statements to have simply omitted certain jurisdictional exceptions.

[¶ 54]   Should the Division initially refer the case to the OAH, the OAH has the option of seeking the advice of the Medical Commission or even transferring the case directly to the Medical Commission. By statute, however, the OAH cannot refer out an issue or the entire case without consent of all parties. Wyo. Stat. Ann. § 27–14–616(e) (LexisNexis 2005).

[¶ 55]   In this case, the Division initially referred the case to the OAH, which almost immediately, and with no further information, referred the case to the Medical Commission. The referral contravened the statute in several respects. First, obviously the OAH ignored the Division's determination as to the appropriate initial referral, effectively cutting the Division out of this step of the referral process. Second, the OAH referred the case to the Medical Commission because it determined it had no jurisdiction over "medically contested" cases. This is an odd determination since the pertinent statute and case law affirmatively state that the OAH has such jurisdiction. *French*, 960 P.2d at 1029. *See generally Russell.*

[¶ 56]   Finally, the record contains no indication that, prior to the referral, the parties were contacted or consented to the same. I believe this renders the referral void. Section 27–14–616(e) serves a serious purpose. The parties, especially at the early stages of a proceeding, know their case better than the OAH. Their input on the issues to be decided, and which tribunal is best situated to decide them, can be critical.

[¶ 57]   I disagree with the majority opinion that record silence equals consent. The agreement of all parties is a statutory prerequisite to referral by the OAH. As such, the parties' consent should be reflected in the record. At the very least the referral order should state that the OAH has received the consent of the parties to the referral. This is necessary for the Medical Commission to determine whether it can accept the referral

because, without the consent of the parties, the OAH exceeds its statutory authority in referring the case. I believe that is exactly what happened in this case—the OAH exceeded its statutory authority rendering its referral of the case to the Medical Commission void.

[¶ 58] The doctors who comprise the Medical Commission are paid by the State for their medical expertise. It is a waste of the doctors' time and medical expertise, as well as state money, for them to be called upon to determine questions of non-medical fact. I believe the statute means exactly what it says-and what this Court has consistently construed it to mean—that a case should only go before the Medical Commission if it is a medically contested case. *Birkle; Jacobs; French.* In this case, the nature of Mr. McIntosh's injury was not determinative of whether or not the injury was work-related. The medical expertise of the panel was not required and should never have been invoked.

[¶ 59] The Medical Commission is a welcome addition to the Workers' Compensation hearing process, but it is simply that—an addition. It is not a substitute for the OAH. It has always been the function of the OAH to determine questions of fact and law and the OAH should not be allowed to abrogate its duty with such seeming total indifference to legislative intent.